UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

| | |
|---|---|
| **LINEAR MOLD & ENGINEERING, LLC,** | Case No.: 21-42617-mar<br>Chapter 11 |
| **Debtor.** | Hon. Mark A. Randon |

**DEBTOR'S FIRST DAY MOTION FOR AUTHORIZATION (A) TO PAY PRE-PETITION WAGES, SALARIES, BENEFITS, AND REIMBURSABLE EXPENSES, AND TO CONTINUE EXISTING EMPLOYEE POLICIES, AND (B) TO CONTINUE IN EFFECT <u>WORKERS' COMPENSATION PROGRAMS</u>**

Linear Mold & Engineering, LLC, as Debtor and Debtor-in-Possession ("Mold & Engineering" or "Debtor"), by its proposed attorneys, Strobl Sharp PLLC, move for authorization, pursuant to 11 U.S.C. §§ 105(a), 363(b), 365(b) and 507(a)(3) and (a)(4), to pay pre-petition wages, salaries, commissions, benefits, reimbursable expenses, medical and such other benefits, to continue its workers' compensation insurance policies and existing employee policies, in connection with the employees of the Debtor ("Employees") and money owed to independent contractors ("Independent Contractors") in this Chapter 11, Subchapter V case. In support of this Motion, the Debtor respectfully represents as follows:

1

## JURISDICTION AND VENUE

1. This Court has jurisdiction to hear the Motion under 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are Section 105(a) of Title 11 of the United States Code as amended from time to time (the "Bankruptcy Code"), Bankruptcy Rule 1015(b) and Local Rule 1015-1.

## GENERAL BACKGROUND

4. On March 26, 2021 (the "Petition Date"), Mold & Engineering commenced a voluntary case under Chapter 11, Subchapter V of the Bankruptcy Code. The Debtor is authorized to continue to operate its business and to manage its assets as Debtor-in-Possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. No Subchapter V Trustee has been appointed in this case.

6. Mold & Engineering employs approximately thirty-eight (38) Employees and from time to time Independent Contractors across its business operations, including management, sales, engineering, account management, production, production management and human resources.

7. The Debtor issues its payroll through Paylocity, a management and payroll service provider.

8. The factual background relating to Debtor's commencement of this Chapter 11, Subchapter V case is set forth in detail in the Affidavit of John Tenbusch, as majority member of the Debtor (the "Tenbusch Affidavit"), [Docket No. 13], filed concurrently herewith and incorporated by reference as if fully set forth.

## RELIEF REQUESTED

9. A substantial percentage of the Mold & Engineering Employees are compensated at a modest level. Any delay or loss in receiving their pay and benefits would cause hardship for many of the Employees. Morale and the operation of the business would be adversely affected if the Employees' pay and benefits are disrupted. The Debtor's ability to preserve its operations and assets will be negatively affected if it is unable to retain its dedicated and loyal work force. Moreover, the Employees are skilled in the profession and are familiar with the equipment and procedures, therefore Mold & Engineering will likely not be able to quickly replace these skilled Employees if any Employees were to seek other employment. Consequently, any loss of Employees would result in a disruption of operations and would have a negative impact on relationships with customers and interfere with cash flow. Accordingly, to minimize hardships suffered by Employees as a consequence of the Chapter 11, Subchapter V filing and to maintain morale, it is essential for the Debtor to be authorized to make the

wage payments and maintain the employee programs and policies described herein.

10. Certain obligations to Independent Contractors for payment and Employees for wages, salaries, commissions, reimbursable expenses, employee contribution plans, medical, and workers' compensation benefits, and other such benefits, and workers' compensation insurance obligations earned and incurred before the Chapter 11, Subchapter V case was filed: (i) were paid by checks that may be dishonored because of the Chapter 11 filing; (ii) are due but have not been paid; or (iii) were earned and will be due after the Petition Date, and the Debtor may have payments due to or be in arrears to certain third-party administrators of the Debtor's benefit programs.

11. To minimize the personal hardship those Independent Contractors and Employees will suffer if pre-petition employee-related obligations are not paid when due, and to maintain Employees' morale and production at this critical time, the Debtor, by this Motion, seeks authority to pay pre-petition claims for wages, salaries, commissions and other compensation, vacation, jury duty and other paid leave, federal and state withholding taxes and payroll taxes which the Debtor pays in the ordinary course of business and benefits, including health and vision insurance premiums (collectively, the "Employee Obligations" and "Independent

Contractor Obligations"), as well as the Reimbursable Expenses (as that term is described herein).

## DEBTOR EMPLOYEE AND INDEPENDENT CONTRACTOR OBLIGATIONS

A. <u>Unpaid Compensation</u>.

12. In the ordinary course of its business, Mold & Engineering issues payroll checks on a weekly basis for its Employees. The wages are paid weekly, seven (7) days in arrears. The aggregate gross weekly payroll to all Employees is approximately $36,000.00, plus the employer's share of corresponding payroll taxes.

13. The Debtor estimates that, as of the Petition Date, approximately $36,000.00 in accrued pre-petition wages, salaries, commissions, overtime, employee plan contributions, jury, holiday and/or sick pay which may have accrued during the most recent pay period, and other compensation (excluding vacation and severance pay) earned prior to the Petition Date was unpaid. In addition, there are pre-petition sales commissions and unpaid wages in the amount of $44,700.00 (collectively, the "Unpaid Compensation").

14. From time to time, Debtor utilizes Independent Contractors for certain necessary services and pays the Independent Contractors as Invoices are

presented. The Debtor estimates that, as of the Petition Date, approximately $5,000.00 was due prior to the Petition Date. (the "Unpaid IC Compensation")

15. Items of Unpaid Compensation and Unpaid IC Compensation were due and owing on the Petition Date because, *inter alia*:

(a) The Chapter 11, Subchapter V petition was filed during the Debtor's regular and customary salary and hourly wage payroll periods;

(b) Some payroll checks issued to Employees and checks issued to the Independent Contractors prior to the Petition Date may not have been presented for payment or cleared the banking system and, accordingly, have not been honored and paid as of the Petition Date;

(c) Employees have received payroll but not all payroll has cleared the Debtor's bank accounts for the prior pay periods.

16. The request to pay Unpaid Compensation relates solely to Employees employed as of the Petition Date.

B. <u>Paid Vacation</u>.

17. The Debtor provides its Employees with paid vacation. The number of paid vacation days an Employee is entitled to is based on the number of years an Employee has been employed by the Debtor and is accrued as of January 1st of the current year. As of the Petition Date, most of the Employees have accrued

unused vacation days. Vacation days are paid with the regular payroll as they are used.

18. The Debtor requests that all Employees be authorized to use and be compensated for such accrued vacation days in the ordinary course of the Debtor businesses. Upon separation, Employees will be entitled to unused vacation pay up to the maximum amount of $13,650.00 less any amount previously paid as pre-petition wage claim to the extent funds are available. In the event there are insufficient funds to pay any unused vacation pay, the Employees shall be entitled to a pre-petition priority claim.

C. <u>Pre-Petition Employee Benefits Withheld from Employee Paychecks and Related Reductions and Payments</u>.

19. The Debtor deducts from its Employees paychecks: (a) payroll taxes and the Employees portion of FICA and unemployment taxes; (b) legally ordered deductions such as wage garnishments, child support and tax levies; (c) voluntary contributions to the charitable and/or political organizations. The Debtor forwards amounts equal to the Employee Deductions to appropriate third-party recipients. Due to the commencement of the Chapter 11, Subchapter V case, all of the above funds were deducted from Employee paychecks but may not have been forwarded to the appropriate third-party recipients. By this Motion, the Debtor seeks authority to forward any and all Employee Deductions and any related direct tax

obligations of the Debtor to appropriate parties in the ordinary course without regard to whether they were deducted pre- or post-petition.

(a) <u>Health Insurance</u>. All of the Debtor's Employees are eligible to participate in health insurance through Priority Health ("Priority"). The Debtor pays eighty percent (80%) of the Employee premiums with the Employee left to cover the remaining twenty percent (20%). The Debtor's monthly cost for health insurance is approximately $23,549.00.

(b) <u>Dental Insurance</u>. All of the Debtor's Employees are eligible to participate in dental insurance through Metlife. Debtor pays one hundred (100%) of dental premiums.

(c) <u>Vision Insurance</u>. All of the Debtor's Employees are eligible to participate in vision insurance through Metlife. The Debtor pays 0.00% of vision premiums.

(d) <u>Life and Disability Insurance</u>. All of the Debtor's Employees are eligible to participate in life, long term, short term and accidental death and dismemberment coverage though Metlife. The Debtor pays one hundred percent (100%) of Employee premiums for coverage on policies for life, long term, short term and accidental death and dismemberment coverage up to $15,000.00.

Debtor's monthly premiums for Dental, Vision and Life and Disability Insurance is approximately $2,093.00.

D.     <u>401(k) Plans</u>.

20. The Debtor does not offer the Employees the opportunity to participate in a company sponsored 401(k) program.

E.     <u>Workers' Compensation</u>.

21. Prior to the commencement of this Chapter 11 case, the Debtor was premium-based insured in Michigan for workers' compensation liability through MTMIC (Manufacturing Technology Mutual Insurance Company) with the monthly premium paid to the MTMIC in the amount of approximately $459.00.

22. In order to continue to employ individuals and continue to operate its business, the Debtor is required under applicable state law to maintain workers' compensation insurance and continue to honor workers' compensation claims, whether pre- or post-petition. If the Debtor is unable to continue to honor workers' compensation claims, state insurance authorities will suspend the Debtor's ability to conduct business.

23. The Debtor seeks authorization to maintain existing workers' compensation programs without interruption and to pay pre- and post-petition workers' compensation insurance premiums.

F. <u>Reimbursable Business Expenses</u>.

24. Prior to the Petition Date and in the ordinary course of its business, the Debtor reimburses Employees for certain expenses incurred in the scope of its employment. As of Petition Date, the Debtor is not aware of any reimbursable expenses. However, in the event the Debtor learns of such expenses relating to, *inter alia*, business related travel expenses, business meals, phone costs, car expenses, mileage reimbursements, purchases of equipment and supplies and miscellaneous business expenses (collectively, "Reimbursable Expenses"), incurred on the Debtor's behalf and with the understanding that they would be reimbursed, Debtor seeks authority to pay such Reimbursable Expenses. Accordingly, to avoid harm to such individuals, the Debtor seeks to be authorized, but not required, to pay the pre-petition Reimbursable Expenses in the ordinary course of business.

**THE RELIEF REQUESTED IS IN THE BEST INTEREST
OF THE DEBTOR, ITS' ESTATE AND ITS' CREDITORS**

25. As a result of this Chapter 11, Subchapter V filing, the Debtor is prohibited from paying claims that arose before Petition Date unless the Debtor receives specific Court authorization. However, pursuant to Section 507(a)(4) of the Code, the Debtor's Employees' claims for wages, salaries, or commissions, including vacation, severance, and sick leave pay earned within one hundred eighty (180) days before the Petition Date are afforded priority status to the extent

of $13,650.00 per Employee. None of the Debtor's Employees or Independent Contractors will be paid more than the allowed amounts as Compensation and Benefits under this Order.

26. Section 105(a) of the Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

27. The relief requested is supported by the well-established "necessity of payment" doctrine. Under that rule, a bankruptcy court will permit a reorganizing debtor to make post-bankruptcy payments on pre-bankruptcy claims when payment is necessary to effectuate a successful reorganization. *See also, In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (necessity of payment doctrine "teaches no more than, if payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during the reorganization, payment may be authorized even if it is made out of corpus").

28. In *In re Ionosphere Clubs, Inc.*, 98 B.R. 174 (Bankr. S.D.N.Y 1989), the court permitted Eastern Air Lines, Inc. to pay its current employees' pre-bankruptcy wages, salaries, medical benefits and business expense claims. The

Court relied on its equitable powers under Section 105(a) of the Code to effectuate a restructuring of the debtor's finances to provide jobs for its employees. *Id.* at 177 (citing H.R. Rep. No. 595 95th Cong. 1st Sess. 16 (1977)). *See also, In re Chateaugay Corp.*, 80 B.R. 279 (S.D.N.Y. 1987) (approving bankruptcy court order authorizing debtor to pay certain pre-bankruptcy wages, salaries, employee reimbursement expenses and benefits, including payments on workers' compensation claims). Specifically, Judge Lifland held that such payments to Eastern's current employees fell under the "necessity of payment" rule, first enunciated by the Supreme Court in *Miltenberger v. Logansport, C. & S.W.R. Co.*, 106 U.S. 286 (1882).

29. Such payments should be permitted in the instant case in view of the Debtor's "ability to pay the claims without disturbing the *pro rata* distribution to other creditors with similar or the same legal rights against the estate." Epling, *Preconfirmation or Preclosing Payment of Pre-petition Claims in Bankruptcy*, 94 Comm. L.J. 187, 188 (1989); *see, e.g., Ionosphere Clubs*, 98 B.R. at 178-79 (permitting payment of pre-petition claims for employees working post-petition, without payment of identical claims of employees not currently working for airline); *Chateaugay*, 80 B.R. at 283-84 (employer permitted to pay pre-petition employee benefit claims for certain employees, without paying identical claims for other employees); Ordin, *Finality of Order of Bankruptcy Court*, 54 Am.

Bankr. L.J. 173, 177 (1980) (when "confronted with special circumstance particularly in the early stages of the case, a court may authorize the payment of pre-petition debts in order to preserve the potential for rehabilitation").

30. Accordingly, the "necessity of payment" doctrine authorizes the Debtor to pay the amounts it seeks to pay pursuant to this Motion. The Debtor seeks to pay Employee Obligations in accordance with the policies, plans, and programs that were in place prior to the Petition Date.

31. The Debtor believes that the majority of the amounts it seeks to pay is entitled to priority claim status under Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code. As such, the Debtor will be required to pay all Employees' priority claims in full in order to confirm a plan. *See*, 11 U.S.C. § 1129(a)(9)(B). The Debtor believes that there are no Unpaid Compensation amounts relating to any one Employee in excess of $13,650.00. Thus, granting the relief sought herein would affect only the timing, and not the amount, of payment of the Employee Obligations and Reimbursable Expenses to the extent they constitute priority claims. Many Employees live from paycheck to paycheck and rely exclusively on receiving their full compensation or reimbursement of their expenses in order to continue to pay their daily living expenses. These Employees will be exposed to significant financial problems if the Debtor is not permitted to pay certain of the unpaid Reimbursable Expenses and Employee Obligations,

13
21-42617-mar    Doc 15    Filed 03/26/21    Entered 03/26/21 18:08:24    Page 13 of 19

particularly wages and salaries. Moreover, the Debtor believes that if it is unable to honor its Employee Obligations, Employee morale and loyalty will be jeopardized at a time when Employee support is critical. The Debtor believes such uncertainty will cause significant anxiety at precisely the time the Debtor needs Employees to perform their jobs at peak efficiency.

32. The Employee Deductions principally represent Employee earnings which Employees or, in the case of garnishments, judicial authorities, have designated for deduction from Employee paychecks and paid accordingly. The failure to pay these benefits could result in hardship to certain Employees. The Debtor expects inquiries from garnishors regarding the Debtor's failure to submit, among other things, child support and alimony payments which are not the Debtor's property, but rather have been withheld from Employee paychecks. Moreover, if the Debtor cannot remit these amounts, the Debtor and the Debtor's Employees may face legal action due to the failure to submit these payments. The Employees are essential assets; they are critical to any successful reorganization. Deterioration in Employee morale and welfare at this critical time undoubtedly would adversely impact the Debtor, the value of the assets and businesses.

# REQUEST FOR AUTHORITY FOR BANKS AND OTHER FINANCIAL INSTITUTIONS TO HONOR CHECKS ISSUED TO PAY EMPLOYEE OBLIGATIONS, INDEPDENT CONTRACTOR OBLIGATIONS, REIMBURSABLE EXPENSES AND RETIREMENT HEALTH BENEFITS AND TO HONOR <u>ALL FUNDS TRANSFER REQUESTS RELATING TO FOREGOING</u>

33. The Debtor requests that all applicable banks and other financial institutions be authorized and directed to receive, process, honor and pay all checks presented for payment and to honor all funds transfer requests, such as direct deposits, made by Debtor related to Employee Obligations, Reimbursable Expenses, and Independent Contractor Obligations whether such checks were presented or funds transfer requests were submitted prior to or after the Petition Date. The Debtor represents that these checks are drawn on identifiable Company payroll and controlled disbursement accounts. Accordingly, checks other than those for Employee Obligations, Reimbursable Expenses and Independent Contractor Obligations will not be honored inadvertently. Moreover, the Debtor represents that the Debtor has sufficient cash reserves to pay promptly all Employee Obligations, Reimbursable Expenses and Independent Contractor Obligations to the extent described herein, on an ongoing basis and in the ordinary course of its businesses. Nothing contained in this Motion shall constitute a request for authority to assume any agreements, policies or procedures relating to Employee Obligations, Reimbursable Expenses and Independent Contractor Obligations.

## NOTICE

34. A complete copy of this Motion has been served by first class mail, email or facsimile on: (a) the United States Trustee; (b) the Subchapter V Trustee; (b) Level One Bank; and (c) the twenty largest unsecured creditors. In light of the nature of the relief requested herein, the Debtor submit that no other or further notice is required.

**WHEREFORE**, Debtor moves for: (i) authorization to pay any and all Employee Obligations and Independent Contractor Obligations that are accrued and unpaid as of the commencement of the Debtor Chapter 11, Subchapter V case; (ii) authorization for and direction to the Debtor's bank, to honor all checks issued, and fund transfers requested, in respect of the Employee Obligations and Independent Contractor Obligations; (iii) authorization to issue new checks and make fund transfer requests to meet the Employee Obligations and Independent Contractor Obligations; and (iv) the granting of such other and further relief as is just and proper, all substantially in accordance with a proposed order attached as **Exhibit A**.

Respectfully submitted,

**STROBL SHARP PLLC**

   */s/ Lynn M. Brimer*
LYNN M. BRIMER (P43291)
PAMELA S. RITTER (P47886)
300 E. Long Lake Road, Suite 200
Bloomfield Hills, MI 48304-2376
(248) 540-2300; fax (248) 645-2690
Email:    lbrimer@stroblpc.com
            pritter@stroblpc.com

Proposed Attorneys for Debtor and Debtor in Possession

Date: March 26, 2021

*S&B\85363\001\MOTBRF\SB725917.DOC

EXHIBIT A

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

In re:

| | |
|---|---|
| **LINEAR MOLD & ENGINEERING, LLC,** | Case No.: 21-42617-mar<br>Chapter 11 |
| **Debtor.** | Hon. Mark A. Randon |

**FIRST DAY ORDER AUTHORIZING DEBTOR (A) TO PAY
PRE-PETITION WAGES, SALARIES, BENEFITS,
AND REIMBURSABLE EXPENSES, AND TO CONTINUE EXISTING
EMPLOYEE POLICIES, AND (B) TO PAY INDEPDENT CONTRACTOR
PAYMENTS AND (C) TO CONTINUE IN
<u>EFFECT WORKERS' COMPENSATION PROGRAMS</u>**

Linear Mold & Engineering, LLC, as Debtor and Debtor-in-Possession ("Mold & Engineering" or "Debtor"), filed a Motion pursuant to 11 U.S.C. §§ 105(a), 363(b), 365(b) and 507(a)(3) and (a)(4), to pay pre-petition wages, salaries, commissions, benefits, reimbursable expenses, medical and such other benefits, to continue its workers' compensation insurance policies and existing employee policies, in connection with the employees of the Debtor ("Employees") and independent contractor ("Independent Contractor") in the Chapter 11, Subchapter V case of Debtor. This Court, after considering the record herein and hearing the argument of counsel, and notice being adequate and sufficient under

1

the circumstances, finds that the relief requested is in the best interest of the Debtor's estate, creditors, and other parties in interest, and that cause exists to grant the Motion.

**THEREFORE, IT IS ORDERED:**

1. The Debtor's Motion is hereby GRANTED.

2. The Debtor is authorized to pay any and all Employee Obligations and Independent Contractor Obligations, as defined in the Motion, which are accrued and unpaid as of the commencement of Debtor's Chapter 11 case.

3. Pursuant to 11 U.S.C. §§ 507(a)(4) and (5), no Employee or Independent Contractor shall receive in excess of $13,650.00.

4. The Debtor is authorized to direct its banks to honor all checks issued and fund transfers requested with respect to Employee Obligations and Independent Contractor, as defined in the Motion.

5. The Debtor is authorized to issue new checks and make funds transfer requests to meet the Employee Obligations and Independent Contractor, as defined in the Motion.