# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

LINEAR MOLD & ENGINEERING, LLC,

      Debtor.

Case No.:  21-42617-mar
Chapter 11

Hon. Mark A. Randon

---

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105(A), 363, 364, 503(B), 1107(A), AND 1108, BANKRUPTCY RULES 6003 AND 6004, AND LOCAL RULE 4001-4 (A) AUTHORIZING THE DEBTOR TO (I) HONOR CERTAIN PREPETITION OBLIGATIONS OWED TO CERTAIN CRITICAL VENDORS AND (II) CONTINUE PREPETITION PRACTICES WITH CERTAIN CRITICAL VENDORS AND (B) AUTHORIZING ALL BANKS AND OTHER FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS; AND MEMORANDUM OF LAW IN SUPPORT**

Linear Mold & Engineering, LLC, Debtor and Debtor-in-Possession in the above captioned case ("Linear" or "Debtor"), by and through its proposed attorneys, Strobl Sharp PLLC, moves for entry of an order, pursuant to Sections 105 and 363(b) of Title 11 of the United States Code 11 U.S.C. §§101-1053 (the "Bankruptcy Code") authorizing payment of pre-petition claims of critical vendors. In support of this Motion, the Debtor respectfully represents as follows:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction to hear the Motion under 28 U.S.C. §§157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are Section 105(a) of Title 11 of the United States Code as amended from time to time (the "Bankruptcy Code"), Bankruptcy Rule 1015(b) and Local Rule 1015-1.

## GENERAL BACKGROUND

4.      On March 26, 2021 (the "Petition Date") the Debtor filed a voluntary petition for relief under Chapter 11, Subchapter V of the Bankruptcy Code.

5.      The Debtor has continued in possession of its property and has continued to operate its business as a Debtor-in-Possession pursuant to §§ 1107 (a) and 1108 of the Bankruptcy Code.

6.      The Court has appointed Mark Shapiro as the Subchapter V Trustee.

## BACKGROUND OF THE DEBTOR

7.      Detailed facts regarding the background of the Debtor and the facts and circumstances leading to the necessity to file this Chapter 11 case can be found in the Affidavit of John Tenbusch [Docket No. 13].

## RELIEF REQUESTED

### A.      Pre-petition Critical Vendor Claims

8.      By this Motion, Debtor respectfully requests the entry of an order authorizing, but not directing, Debtor to pay, in its sole discretion and in the ordinary course of business, as and when due, certain prepetition claims of vendors (the "Critical Vendor Claims") whose services are critical to Debtor's

uninterrupted ongoing operations (the "Critical Vendors"). The Critical Vendor Claims include, but are not limited to, obligations to vendors that do not have contracts with the Debtor, vendors who may limit or suspend performance or supply of goods and vendors who are directed suppliers in contracts with customers. Debtor undertook a lengthy process to identify the Critical Vendors.

9.      The Debtor seeks authority to pay the pre-petition claims of those Critical Vendors as set forth in this motion that, in the reasonable exercise of the Debtor's business judgment, are essential to the preservation of the value of the Debtor's business. The Critical Vendors are essential because (a) they provide specialized services that are essential to the Debtor's ongoing operations, or (c) they are directed suppliers that Debtor's is contractually obligated to utilize.

10.      The following vendors supply materials that are critical to the Debtor's continued operations that are not otherwise available from alternative local suppliers:

| Supplier | Product | Pre-Petition Balance |
|---|---|---|
| EOS North America ("EOS") | Printing consumables | $32,521.31 |
| Creative Foam Corporation ("Creative Foam") | Tooling | $12,510.00 |
| DRS Industries, Inc. ("DRS") | Tooling | $16,100.00 |
| Moldex 3D Northern America, Inc. ("Moldex") | Software | $3,932.00 |

11.    DRS and Creative Foam are directed suppliers to the Debtor and Moldex is a single source supplier for software critical to the EOS machining.  The Debtor will not be able to resource the goods and services provided by the Critical Vendors without incurring significant disruption in operations. Specifically:

    a.    EOS manufactured one of Debtor's highly engineered 3D metal printers required in the production of parts for Debtor's customers. As the manufacturer of the printer, EOS provides all operating consumables, such as printing powders and lasers, as well as technical support for the printer.  The EOS printer is critical to Debtor's continued operations.  There is no alternative supplier for the EOS consumables.

    b.    Creative Foam has custody of tooling designed to cut to the specifications of two of Debtor's customers, APTIV Mexican Holdings (US), LLC, and TE Connectivity Corporation.  As such, Creative Foam is a directed supplier critical to Debtor.  Debtor cannot resource the supplies it purchases from Creative Foam without the consent of its customers which would lead to disruption and the possible loss of business opportunities.

    c.    DRS has custody of certain of the Debtor's tools used in the fabrication of parts for Plasan Carbon Composites, Inc., and TecRep Corporation.  Debtor was directed by its customers to provide DRS with its tooling making it a directed supplier. Moreover, the cost to move the tooling to another supplier outweighs the cost to Debtor of treating DRS as a critical vendor.

    d.    Moldex designed the software used to operate the EOS 3D printer. The software is licensed to Debtor on a month by month basis. The Moldex software is essential to the operation of the EOS printer.  There is no alternative supplier to the software specifically designed to operate the EOS printer.

12.    The maximum aggregate amount to be paid to the Critical Vendors is $65,063.31.  All payments to Critical Vendors contemplated herein are reflected in

the Budget attached as **Exhibit B** to the Debtor's Motion for Authority to Use Cash Collateral which has been approved by Level One Bank.

13.    Debtor must maintain both its customer relationships and necessary goods and services integral to the Debtor's operations in order to restructure. Interruption of either the necessary products or services could endanger the Debtor's operations. The Debtor entered into these proceedings with an enviable record of reliability and on time performance and must maintain that reputation. To avoid irreparable harm, the Debtor must continue to receive an uninterrupted supply of essential products and services.

14.    If the Debtor is unable to provide its customers with goods and services, the customers' operations may also be disrupted and the customers will be compelled to resource the work placed with Debtor.  This could substantially impair the Debtor's ability to collect on its accounts receivable and to be awarded future projects.

15.    The failure to maintain these key vendors at this critical time would irreparably harm the Debtor and would have a potentially catastrophic impact on its reorganization. Giving the Debtor the flexibility to pay pre-petition claims to certain vendors, is crucial to maintaining customer relationships.

16.    To identify vendors crucial to the Debtor's operations, the Debtor engaged in a thorough analysis of its vendor relationships with each of its vendors and service providers.   The Debtor and its advisors closely reviewed its accounts

payable and prepetition vendor lists, to identity those critical or strategic creditors most essential to the Debtor's operations and within the Debtor's budget constraints.

17. The Critical Vendors have threatened to terminate or disrupt goods or services if they do not receive payment on account of their Critical Vendor Claims. The termination or disruption of these goods or services will result in material harm to the Debtor, its customers, creditors and its estate. The Debtor's business operations are directly dependent on the continued provision of services to the Debtor's customers. The Debtor's business is service driven and time sensitive. Payment of the Critical Vendor Claims will permit the Debtor to timely deliver the service and quality on which its customers have come to rely and will preserve the value of the Debtor's business.

B.    **Conditions to Payment of Critical Vendor Claims**

18. The Debtor requests authorization to pay all, or a portion of, the Critical Vendor Claims as determined by the Debtor in its sole discretion in order to continue receiving the vital services provided by the Critical Vendors. The Debtor proposes to condition payment of Critical Vendor Claims on the agreement that such individual Critical Vendors continue supplying services to the Debtor on the same trade terms given to the Debtor prior to the Petition Date., or such other favorable trade practices. The Debtor reserves the right to negotiate new more

favorable trade terms with any Critical Vendor as a condition to payment of any Critical Vendor Claim.

19.     To ensure that the Critical Vendors deal with the Debtor on Customary Trade Terms, the Debtor propose that (a) the Debtor be authorized, in its sole discretion, to send a letter substantially in the form attached hereto as **Exhibit C** to each Critical Vendor, along with a copy of the Order granting this Motion  along with (b) the checks to pay Critical Vendor Claims (to the extent checks are issued) or the wire forms (to the extent payments are made by electronic transfer) contain a legend substantially in the following form:

> By accepting this check, the payee agrees to the term of that certain Order of the United States Bankruptcy Court of the Eastern District of Michigan, Southern Division, dated as of May __, 2021, in the payor's Chapter 11 case (Case No. 21-42617-mar), entitled Order Granting Debtor's Motion For Entry of an Order Authorizing Payment of Prepetition Claims of Critical Vendors (hereinafter the Critical Vendors) (including, if applicable, any agreement entered into pursuant to that Order) and submits to the jurisdiction of the Bankruptcy Court for enforcement thereof.

20.     The Debtor proposes that the letter sent to Critical Vendors shall include, without limitation, the following terms:

> a.  The amount of such Critical Vendor's estimated Critical Vendor Claims, accounting for any setoffs, other credits and discounts thereto, which shall be mutually determined in good faith by the Critical Vendor and the Debtor (but such amount shall be used only for the purposes of determining such Critical Vendor Claim under the Critical Vendor Order and shall not be deemed a claim

7

allowed by the Court, and the rights of all interested persons to object to such claim shall be fully preserved until further order of the Court);

b. The Customary Trade Terms between such Critical Vendor and the Debtor, or such other terms as the Critical Vendors and the Debtor may agree, and the Critical Vendor's agreement to provide goods and services to the Debtor based upon Customary Trade Terms or such other favorable terms as the Debtor and the Critical Vendor may agree;

c. The Critical Vendor's acknowledgement that it has reviewed the terms and provisions of the Critical Vendor Order and consents to be bound thereby; and

d. The Critical Vendor's agreement that it will not be separately seek payment for reclamation claims outside the terms of the Critical Vendor Order.

21. Such a letter, once agreed to by a Critical Vendor, shall be referred to herein as a "Trade Agreement."

22. By this Motion, the Debtor requests that it be authorized, but not directed, to enter into a Trade Agreement when the Debtor determines in its sole discretion that such Trade Agreement is necessary or beneficial. The Debtor seeks authority to pay any Critical Vendor Claim even if the Debtor and the Critical Vendor in question have not, despite diligent efforts, entered into a Trade Agreement, if the Debtor determines, in its business judgment, that failure to pay such Critical Vendor Claim is likely to result in irreparable harm to the Debtor's business operations.

23.    The Debtor reserves the right, on a case-by-case basis, to obtain written acknowledgement from Critical Vendors of the Customary Trade Terms to which the parties have agreed.  Nothing in this Motion shall be construed as a waiver by the Debtor of its right to contest any invoice of a Critical Vendor under applicable non-bankruptcy law.

24.    If a Critical Vendor refuses to supply services to the Debtor on Customary Trade Terms following receipt of payment on its Critical Vendor Claim, or fails to comply with any Trade Agreement entered into between such Critical Vendor and the Debtor, then the Debtor shall seek authority, in its discretion and without further order of the Court, to declare that such Critical Vendor is in breach of its Trade Agreement with the Debtor and obtain appropriate relief from the Court, including, without limitation, injunctive relief to compel such Critical Vendor to comply with the terms and provisions of such Trade Agreement unless such Critical Vendor cures such default or reaches a more favorable alternative agreement with the Debtor, as determined in the Debtor's sole discretion.

## MEMORANDUM OF LAW

### C.    Courts Widely Recognize a Debtor's Authority to Make Postpetition Payments of Critical Prepetition Claims.

25.     Satisfaction of a prepetition debt in order to keep critical supplies or services flowing is a use of property other than in the ordinary courts of administering an estate in bankruptcy under §363(b)(1) of the Bankruptcy Code. *In re Kmart Corp.,* 359 F.3d 866, 872 (7th Cir. 2004).  Bankruptcy Code §105(a) allows a bankruptcy court to *issue any order, process or judgment that is necessary or appropriate to carry out the provisions* of the Code.  11 U.S.C. §105(a).  The power conferred by §105(a), however, is one to implement rather than override the other provisions of the Bankruptcy Code.

26.     The Court may grant the relief requested here in pursuant to Section 363 and 364 of the Bankruptcy Code.  For example, in *In re James A. Phillips, Inc.*, 29 B.R. 391, 397 (S.N.N.Y 1983), the court authorized the debtor, a subcontractor, to pay the pre-petition claims of suppliers who were potential lien claimants, because the payments were needed in order for the general contractor to release funds owed to the debtor.   The Debtor seeks to pay pre-petition critical vendor claims only to those vendors who agree to continue to provide post-petition goods and services on customary trade terms.   Consequently, the payments contemplated by this motion are consistent and appropriate under Sections 363 and 364 of the Code.

27.     It is well established that a bankruptcy court has the equitable power to authorize the payment of prepetition claims where such payments are necessary to preserve the going-concern value of a debtor's business, thereby facilitating

reorganization. *See, e.g., Miltenberger v. Logansport, Crawfordsville and Southwestern Ry. Co.*, 106 U.S. 286, 311 (1882); *Am. Brake Shoe & Foundry Co., v. Pere Marquette R.R.*, 205 F. 14 (6th Cir. 1913); *In re Just For Feet, Inc.*, 242 B.R. 821, 825 (D.Del.1999). Claims are generally afforded Critical Vendor status if, (a) the payments are necessary to the reorganization process; (b) a sound business justification exists in that the critical vendors refuse to continue to do business with the debtor absent being afforded critical vendor status; and (c) the disfavored creditors are at least as well off as they would have been had the critical vendor order not been entered. *See, In re. RnD Engineering, LLC*, 556 B.R. 303 (Bankr.E.D.Mich. 2016).

28.     As in *RnD Engineering*, the Debtor here has articulated a sound business justification for paying the Critical Vendor Claims. The Critical Vendors provide essential services to the Debtor's customers and some are directed suppliers required by Debtor's customers. Finally, given the importance of ongoing operations and the substantial revenue the Debtor derives from its operations, the disfavored creditors would be harmed if denial of this Motion resulted in the interruption of operations. The loss of revenue would from the disruption of business would reduce the Debtor's operations and, thus, the recovery available to creditors.

29.     There is ample precedent for the post-petition satisfaction of the prepetition claims described in this Motion. Bankruptcy courts have granted

Debtor relief quite similar to that sought in this Motion. *See*, *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bank.S.D.Ohio 1991) (approving payments of prepetition claims where *the payment is necessary to avert a serious threat to the Chapter 11 process*); *In re Corner Home Care, Inc.*, 438 B.R. 122 (Bankr.W.D.Ky.2010); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D.Ohio 1991); *In re Tropical Sportswear Int'l Corp.,* 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005) *(bankruptcy courts recognize that §363 is a source of authority to pay critical trade vendor payments, and §105 is used to fill in the gaps).*

30.   Moreover, as a Debtor-in-Possession operating pursuant to sections 1107(a) and 1108 of the Bankruptcy Code the Debtor is a fiduciary "holding the bankruptcy estate and operating the business for the benefit of . . . [their] creditors." *In re Coserv*, 273 B.R. 487, 497 (Bankr. N.D. Tex 2002).   The Debtor's duties include the duty to "protect and preserve the estate, including [the] operating business going concern value. *Id.*   Moreover, in certain circumstances, that duty may be fulfilled only by a "preplan satisfaction of prepetition claims." *Id.*

31.   The Bankruptcy Court in *Coserv* established a three-prong test for determining whether a preplan payment to critical vendors is an appropriate exercise of a Debtor's fiduciary duty as follows:

> First, it must be critical that the debtor deal with the claimant.   Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of

economic advantage to the estate or the Debtor's going concern value, which is disproportionate to the amount of the claimants prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by prepayment of the claim.

Id., at 498.

32.    In the instant case, payment by the Debtor of the Critical Vendor Claims as set forth herein meets all three prongs of the *Coserv* test. The Debtor has identified only those creditors that are essential to ongoing operations. Each of the vendors so identified could frustrate the Debtor's continued operations if they refused to provide goods and services post-petition. An interruption or delay in goods and services could possibly lead to the shutdown of the Debtor's businesses resulting in loss of customers and revenue and could lead to damage claims by customers. Therefore, the Debtor can meet its fiduciary duties only by paying the Critical Vendors as identified herein.

## NOTICE

33.    Notice of this Motion has been given to the Office of the United States Trustee, the Subchapter V Trustee, Level One Bank, U.S. Small Business Administration and, pursuant to Local Rule 4001-4(d), all of the Debtor's creditors.

## WAIVER OF BANKRUPTCY RULE 6004(h)

34. The Debtor seeks a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Rule 6004(h) of the Bankruptcy Rules, "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bank. P. 6004(h). As set forth above, paying the Critical Vendor Claims are necessary to prevent irreparable damage to Debtor's operations and a successful reorganization. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Rule 6004(h), to the extent it applies.

## CONCLUSION

35. Payment of the Critical Vendor Claims is justified because (a) payment of the claims will provide necessary services and materials for Debtor's operations, (b) the payment terms proposed by the Debtor represents a prudent exercise of the Debtor's business judgment, and (c) the disfavored creditors will fare worse if the Motion were denied. If the Motion is denied, the Debtor's business may suffer substantial interruption and immediate harm.

**WHEREFORE**, the Debtor respectfully requests that the Court (i) enter an order, substantially in the form attached hereto as **Exhibit A,** authorizing, but not directing, the Debtor to (a) pay the Critical Vendor Claims of the Critical Vendors

up to the Critical Vendor Cap and (b) continue during the post-petition period its prepetition practices with the Critical Vendors and (ii) grant such other and further relief as it deems just and proper.

Dated: May ___, 2021          Respectfully submitted,

**STROBL SHARP PLLC**

By: /s/ *Lynn M. Brimer* _____
Lynn M. Brimer (P43291)
Pamela S. Ritter (P47886)
300 East Long Lake Road, Suite 200
Bloomfield Hills, MI 48304-2376
Telephone: (248) 540-2300
Fax: (248) 645-2690
Email: lbrimer@stroblpc.com
       pritter@stroblpc.com

Counsel for Debtor and Debtor-in-Possession

**EXHIBIT A**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:

| | |
|---|---|
| **LINEAR MOLD & ENGINEERING, LLC,** | **Case No.: 21-42617-mar** |
| | **Chapter 11** |
| **Debtor.** | **Hon. Mark A. Randon** |

---

**ORDER GRANTING
DEBTOR'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11
U.S.C. §§ 105(A), 363, 364, 503(B), 1107(A), AND 1108, BANKRUPTCY
RULES 6003 AND 6004, AND LOCAL RULE 4001-4 (A) AUTHORIZING
THE DEBTOR TO (I) HONOR CERTAIN PREPETITION OBLIGATIONS
OWED TO CERTAIN CRITICAL VENDORS AND (II) CONTINUE
PREPETITION PRACTICES WITH CERTAIN CRITICAL VENDORS
AND (B) AUTHORIZING ALL BANKS AND OTHER FINANCIAL
INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND
TRANSFERS; AND MEMORANDUM OF LAW IN SUPPORT**

This matter coming before the Court on the Debtor's Motion for Entry of An

Order Pursuant to 11 U.S.C. §§ 105(A), 363, 364, 503(B), 1107(A), and 1108,

Bankruptcy Rules 6003 and 6004, and Local Rule 4001-4 (A) Authorizing the

Debtor to (I) Honor Certain Prepetition Obligations Owed to Certain Critical

Vendors and (II) Continue Prepetition Practices with Certain Critical Vendors and

(B) Authorizing All Banks and Other Financial Institutions to Honor and Process

Related Checks and Transfers (the "Motion") filed by the above-captioned Debtor

and Debtor-in-Possession (the "Debtor"); the Court having reviewed the Motion

1

and having heard statements of counsel in support of the Motion at a hearing before the Court; the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (b) service and notice of the Motion was sufficient under the circumstances; and (c) the legal and factual bases set forth in the Motion establish just cause for the relief granted herein;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion shall be, and hereby is, GRANTED.

2.      Capitalized terms used, but not otherwise defined herein, shall have the meanings given to them in the Motion.

3.      The Debtor is hereby authorized, but not directed, in its business judgment and sole discretion, to pay the Critical Vendor Claims of the Critical Vendors in an aggregate amount not to exceed $65,063.31, as set forth in the Motion.

4.      The Debtor is authorized, but not directed, to undertake appropriate efforts to cause Critical Vendors to enter into a Trade Agreement with the Debtor as a condition of payment of each such Critical Vendor's Critical Vendor Claims.

5.      The Debtor is hereby authorized, but not directed, in its sole discretion, to continue during the postpetition period its prepetition practices with the Critical Vendors as set forth in the Motion.

6.     All banks and other financial institutions are hereby directed to receive, process, honor, and pay any and all checks presented for payment and electronic transfer requests made by the Debtor related to the payment of the obligations described in the Motion and approved herein, whether such checks were presented or such electronic transfer requests were submitted before, or are presented or submitted after, the Petition Date. All such banks and financial institutes are further directed to rely on the Debtor's designation of any particular check or electronic payment request as approved pursuant to this Order.

7.     The Debtor is authorized to condition the payment of the Critical Vendor Claims on the agreement of the individual Critical Vendor to continue supplying goods to the Debtor according to Customary Trade Terms or such other trade terms as are agreed to by the Debtor and the Critical Vendor as set forth in the Motion.

8.     Nothing in this Order or the Motion is intended or should be construed as (a) an admission as to the validity or priority of any claim against the Debtor (b) a waiver of the Debtor's rights to dispute any claim, including the validity of priority thereof, or (c) a promise to pay any claim, (d) an implication or admission that any particular claim would constitute a Critical Vendor Claim, or (e) an approval of assumption of any agreement, contract or lease whether under section 365(a) of the Bankruptcy Code or otherwise. Likewise, any payment made

3

pursuant to this Order is not intended and should not be construed as an admission as to the validity or priority of any claim or a waiver of the Debtor's rights to subsequently dispute such claim.

9.     Nothing in the Motion or this Order, nor the Debtor's implementation of the relief granted in this Order, shall be deemed to modify or waive any of the Debtor's rights with respect to goods and services requested or received from the Critical Vendors including the Debtor's rights to (a) cancel a purchase order (including any outstanding purchase orders), (b) decline the acceptance of goods and services, (c) return any defective, nonconforming or unacceptable good, or (d) contest the amount of any invoice or claims, or liens related thereto, on any grounds.

10.    All payments made in accordance with this Order shall be subject to the terms and conditions set forth in the Order Granting Debtor's First Day Motion Pursuant to Sections 105(a), 361, 362, 363, 364 and 552 of the Bankruptcy Code and Bankruptcy Rule 4001(b) for Entry of Interim and Final Orders (A) Authorizing Use of Cash Collateral, (B) Granting Adequate Protection, and (C) Scheduling a Final Hearing on the Motion (the "<u>Cash Collateral Order</u>"), and to the extent that any provision herein is inconsistent with the terms of the Cash Collateral Order, the Cash Collateral Order shall control.

4

11.     All payments made in accordance with this Order shall be subject to and reflected in the Debtor's Budget.

12.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of this Motion.

13.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

14.     The Debtor is authorized to take all actions necessary to implement this Order.

15.     The Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Order.

**EXHIBIT B**

**<u>CRITICAL VENDOR LETTER</u>**

_____, 2021


TO:   [Critical Vendor]
      [Name]
      [Address]

Dear Valued Vendor:

As you are aware, on March 26, 2021 (the "Petition Date"), Linear Mold & Engineering, LLC (the "Debtor") filed a voluntary petition under Chapter 11, Subchapter V, of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Case" and the "Bankruptcy Court", respectively).  The Debtor has requested the Bankruptcy Court's authority to pay certain critical suppliers or service providers in recognition of the importance of our relationship with such suppliers and service providers and our desire that the Bankruptcy Case have as little effect on them as possible.  On _____, 2021, the Bankruptcy Court entered an order (the "Order") authorizing the Debtor, under certain conditions, to pay pre-bankruptcy claims of certain trade creditors that agree to the terms set forth below and agree to be bound by the terms of the Order.  A copy of the Order is enclosed.

In order to receive payment on pre-bankruptcy claims, each selected Critical Vendor must agree to continue supplying goods or services to the Debtor based on acceptable and "Customary Trade Terms."  Customary Trade Terms are defined as the normal and customary trade terms, practices and programs (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowance, rebates, coupon reconciliation, normal product mix and availability and other applicable terms and programs) in effect between such creditor and the Debtor on a historical basis prior to the Petition Date or such other trade terms, practices and programs that are at least as favorable to the Debtor as those in effect during such time.

1

For purposes of administration of this trade program as authorized by the Bankruptcy Court, the Debtor and you agree as follows:

1. The estimated Balance of the Prepetition claim (net of any setoffs, credits or discounts (the "Claim")) that the Debtor will pay you is $_____ the ("Prepetition Claim Payment").

2. You will provide terms as follows (if more space is required, attach continuation pages):

3. In consideration for the payment described herein, you agree that, if you have taken steps to file or assert a lien on the Debtor's assets prior to entering to this letter agreement, you agree to take all necessary steps to remove such lien as soon as possible.

4. You will hereafter extend to the Debtor all Customary Trade Terms (as defined in the Order) and as existed before the Petition Date.

Payment of your claim in the manner set forth in the Order may occur only upon execution of this letter by a duly authorized representative of your company and the return of this letter to the Debtor. Your execution of this letter agreement and return of the same to the Debtor constitutes an agreement by you and the Debtor. You agree to be bound by the Order and you submit to the jurisdiction of the Bankruptcy Court for enforcement thereof, and you further agree and/or represent:

(a) to the customary Trade Terms and, subject to the reservations contained in the Order, to the amount of the Trade Claim set forth above;

(b) that, for a period of no less than six (6) months from the Petition Date, you will continue to supply the Debtor with goods or services, as applicable, pursuant to the Customary Trade Terms and that the Debtor will pay for such goods in accordance with Customary Trade Terms;

(c) that you have reviewed the terms and provisions of the Order and that you consent to be bound by such terms; and

(d) that you will not separately seek payment for reclamation and similar claims outside the terms of the Order.

5. Notwithstanding the foregoing, if you receive the Prepetition Claim Payment from the Debtor based on any pre-bankruptcy amount owing to you and

2

you do not extend to the Debtor all Customary Trade Terms (as defined in the Order), you are required to return the Prepetition Claim Payment to the Debtor.

The Debtor and you also hereby agree that any dispute with respect to this agreement, the Order and/or your participation in the Trade Payment Program shall be determined by the Bankruptcy Court.

3