UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

LINEAR MOLD & ENGINEERING, LLC,

Debtor.

Case No.: 21-42617-mar
Chapter 11

Hon. Mark A. Randon

**SUPPLEMENTAL EXHIBIT TO DEBTOR'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105(A), 363, 364, 503(B), 1107(A), AND 1108, BANKRUPTCY RULES 6003 AND 6004, AND LOCAL RULE 4001-4 (A) AUTHORIZING THE DEBTOR TO (I) HONOR CERTAIN PREPETITION OBLIGATIONS OWED TO CERTAIN CRITICAL VENDORS AND (II) CONTINUE PREPETITION PRACTICES WITH CERTAIN CRITICAL VENDORS AND (B) AUTHORIZING ALL BANKS AND OTHER FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS; AND MEMORANDUM OF LAW IN SUPPORT [Docket No. 66]**

Linear Mold & Engineering, LLC, the Debtor and Debtor-in-Possession in the above-captioned case, by its attorneys Strobl Sharp PLLC, hereby files the following document as a supplemental Exhibit to Debtor's Motion pursuant to Sections 105 and 363(b) of Title 11 of the United States Code 11 U.S.C. §§101-1053 authorizing payment of pre-petition claims of critical vendors [Docket No. 66].

> Affidavit of John Tenbusch in Support of Debtor's Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105(A), 363, 364, 503(B), 1107(A), and 1108, Bankruptcy Rules 6003 and 6004, and Local Rule 4001-4 (A) Authorizing the Debtor to Honor Certain Prepetition Obligations Owed to Certain Critical Vendors and to Continue Prepetition Practices with Certain Critical Vendors

Respectfully submitted,

**STROBL SHARP PLLC**

Date: May 24, 2021

    */s/ Lynn M. Brimer*
LYNN M. BRIMER (P43291)
PAMELA S. RITTER (P47886)
Strobl Sharp, PLLC
300 E. Long Lake Road, Suite 200
Bloomfield Hills, MI 48304-2376
(248) 540-2300; fax (248) 645-2690
Email:     lbrimer@strobllaw.com
            pritter@strobllaw.com
Attorneys for Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

In re:

**LINEAR MOLD & ENGINEERING, LLC,**

Debtor.

Case No.: 21-42617-mar
Chapter 11

Hon. Mark A. Randon

## AFFIDAVIT OF JOHN TENBUSCH IN SUPPORT OF DEBTOR'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105(A), 363, 364, 503(B), 1107(A), AND 1108, BANKRUPTCY RULES 6003 AND 6004, AND LOCAL RULE 4001-4 (A) AUTHORIZING THE DEBTOR TO HONOR CERTAIN PREPETITION OBLIGATIONS OWED TO CERTAIN CRITICAL VENDORS AND TO CONTINUE PREPETITION PRACTICES WITH CERTAIN CRITICAL VENDORS

**STATE OF MICHIGAN** )
) SS
**COUNTY OF OAKLAND** )

John Tenbusch, being duly sworn, deposes and says:

1. I am the 97% member in Linear Acquisition, LLC ("Acquisition"), which is the sole member of Linear Mold & Engineering, LLC d/b/a Linear AMS ("Mold & Engineering"). I serve as the Chief Executive Officer of Mold & Engineering. In my capacity as the majority member of Acquisition and CEO of Mold & Engineering, I am familiar with the day-to-day operations, business affairs, customers and vendors of the Debtor. I am authorized to submit this affidavit (the "Affidavit") on behalf of the Debtor.

2. I make this Affidavit to assist the Court and other parties in understanding the relationship between the Debtor and the vendors identified in the Debtor's motion for entry of an Order pursuant to 11 U.S.C. §§ 105, 363(b) 105(A), 363, 364, 503(B), 1107(A), and 1108 and Bankruptcy Rules 6003 and 6004, and Local Rule 4001-4 authorizing payment of pre-petition claims of critical vendors. The Debtor is are operating is business and managing it assets as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code (the "Critical Vendor Motion") [Docket No. 66].

3. Debtor filed the Critical Vendor Motion on May 4, 2021, seeking to designate four (4) vendors as critical to the Debtor's continued business operations and authorizing the Debtor to pay the prepetition claims of such vendors.

**A. DRS Industries, Inc.**

4. DRS Industries, Inc. ("DRS") is a tooling and injection molding supplier servicing multiple customers in numerous industries, including automotive, aerospace, appliance, medical and telecommunications.

5. DRS has expertise in running production grade parts at early stages of a project and in assisting in the development of production tooling and injection molding.

6. Two of Debtor's customers, Plasan Carbon Composites, Inc. ("Plasan") and TecRep ("TecRep") Corporation, have directed the Debtor to

deliver tooling to DRS in order to have DRS provide prototype and production grade parts to Debtor. As such, DRS is a directed supplier in connection with Plasan and TecRep. Debtor cannot resource the services and goods provided by DRS without the explicit consent of Plasan and TecRep.

7. Debtor's records reflect a prepetition claim owed to DRS in the amount of $16,100.00. During the six months preceding the Petition Date, Debtor paid DRS a total of $42,100.00. The payments were ordinary course payments made within the Debtor's the standard historic payment terms with DRS.

8. All amounts owed to DRS relate to invoices issued on or after February 1, 2021.

9. From November 2011 through the Petition Date, the work placed with DRS represents 20% of Debtor's total sales.

10. On March 29, 2021, Craig Simon of DRS advised me via email that due to the Debtor's bankruptcy filing, DRS has ceased work on the Debtor's projects and would not resume work on the Debtor's projects without an agreement regarding payment on the DRS prepetition claim.

11. I contacted Mr. Simon regarding his email correspondence of March 29, 2021, in order to determine if DRS would resume services to the Debtor.

12. DRS agreed to resume work for the Debtor only after I committed to filing a motion seeking authority to pay the DRS prepetition claim in full. Mr.

Simon would not agree to resume services unless I agreed to pay the entire DRS prepetition claim under a critical vendor order.

13. I have investigated the possibility of resourcing the work DRS performs for the Debtor to an alternative supplier. However, the cost to move the Debtor's tooling located at the DRS facility exceeds the amount owed to DRS on its prepetition claim.

14. In addition, moving the tooling from the DRS facility would lead to disruption in the Debtor's production of parts for its customers and would lead to delays in the Debtor's ability to service its customers. Ultimately, it is possible the customers could resource work currently placed with Debtor if the Debtor is no longer able to timely produce parts with DRS.

15. Approximately $2,450.00 of the DRS prepetition claim constitutes a potential administrative claim under Section 503(b)(9) in connection with parts delivered in the 20 days prior to the Petition Date. All but $7,400.00 of the DRS claim would have been eligible for a reclamation claim under Section 546(c), on March 29th but for my agreement to treat DRS as a critical vendor. None of the DRS claim is entitled to secured claim status.

16. DRS has agreed to extend the prepetition credit terms to the Debtor if the critical vendor motion is granted, including payment on net 30 days without a limit on the amount of credit extended to the Debtor.

17. The Debtor has projected gross sales for 2021 of approximately $4 million. It is possible that the loss of the DRS services could result in a loss of as much as $800,000.00 in work to the Debtor and its estate if Plasan and TecRep resource the work placed with the Debtor.

18. Neither I, nor any other insider has an interest in or relationship with DRS and I have not personally guaranteed the DRS claim.

**B. Creative Foam Corporation**

19. Creative Foam Corporation ("Creative Foam") is an expert in foam, nonwovens and adhesives engineered to assist the automotive industry in developing and implementing quieter and stronger products.

20. Debtor purchased insulating and noise reducing foam from Creative Foam cut to the specific design specifications of its customers. Creative Foam has custody of tooling designed to cut to the specifications of two of Debtor's customers, APTIV Mexican Holdings (US) ("APTIV"), LLC, and TE Connectivity Corporation ("TE Connectivity"). As such, Creative Foam is a directed supplier with respect to APTIV and TE Connectivity. The Debtor cannot resource the products supplied by Creative Foam in connection with projects from APTIV and TE Connectivity without the customer's consent.

21. Resourcing the work placed with Creative Foam will result in a disruption in the Debtor's production and a delay in the Debtor's ability to service its customers.

22. The Debtor's records reflect a prepetition claim due to Creative Foam in the amount of $12,510.00. During the six months prior to the Petition Date, the Debtor paid Creative Foam $9,596.24 pursuant to the ordinary payment terms between the parties.

23. Shortly after the Petition Date, a representative of Creative Foam contacted Sheila Olivio, the Debtor's accounts payable manager, and advised her that Creative Foam would not continue to provide goods or services to the Debtor unless it was treated as a critical vendor and its entire prepetition claim paid in full.

24. On April 12, 2021, Creative Foam forwarded an email to me indicating that it would resume suppling the Debtor only if is prepetition claim is paid in full.

25. Creative Foam has continued to refuse to supply the Debtor until the Critical Vendor Motion is approved and the prepetition claim paid in full.

26. Creative Foam initially indicated that it would implement cash in advance terms for shipments to the Debtor during the course of this bankruptcy. However, Creative Foam has subsequently agreed to extend prepetition credit terms consisting of net 30 days with no limit on credit.

27. The Debtor will issue a payment to Creative Foam in connection with its prepetition claim only after Creative Foam has executed a Vendor Agreement containing the prepetition credit terms and an agreement to extend the credit terms for a minimum of six (6) months.

28. Since July 2017, approximately 10% of Debtor's total sales rely on products supplied by Creative Foam. Based on Debtor's projected sales for 2021, approximately $400,000.00 of sales will require products supplied by Creative Foam. It is possible that Debtor's customers will resource the work currently placed with the Debtor that relies on products provided by Creative Foam if Debtor seeks an alternative supplier resulting in a loss of $400,000.00 of sales and benefit to the estate.

29. None of Creative Foam's prepetition claim is eligible for administrative claim treatment under Section 503(b)(9) or to treatment as a reclamation claim under Section 546(c).

30. Neither I, nor any other insider, has an interest in or relationship with Creative Foam and I have not personally guaranteed the Creative Foam claim.

**C. EOS North America**

31. EOS North America ("EOS") designed and manufactured two of Debtor's highly engineered 3D metal printers (the "EOS Printers") required for the production of parts for Debtor's customers.

32. Four of Debtor's customers – Commercial Tool (Whirlpool), Pro-Mold (GE Appliance), ZF Automotive and Wegman Automotive – order parts produced on the EOS Printers.

33. As the manufacturer, EOS is the sole source for the consumables, such as printing powders and lasers, as well as technical support, needed to operate and produce parts on the EOS Printers. There is no alternative supplier for the consumables required to operate the EOS Printers.

34. EOS has a prepetition claim in the amount of $32,521.32. Of that amount, $13,086.00 of product was delivered on May 23, 2021 and is entitled to administrative claim status under Section 503(b)(9).

35. On March 29, 2021, Andy Snow of EOS contacted me to advise me that EOS was stopping all supplies pending a resolution of its prepetition claim. EOS agreed to resume shipping supplies and providing technical support for the EOS Printers based on my representation that the Debtor would be filing a motion seeking authority to pay its prepetition claim. EOS has indicated that it will stop supplying the consumables needed to operate the EOS Printers if the Critical Vendor Motion is not granted with respect to EOS.

36. During the six months prior the Petition Date, Debtor paid EOS a total of $34,913.10 in ordinary course payments.

37. Since November 2018, approximately 15% of Debtor's total sales rely on products produced on the EOS Printer. Based on Debtor's projected sales for 2021, approximately $600,000.00 of sales will require the Debtor to run parts on the EOS Printer.

38. If the Debtor cannot maintain a supply of the consumables needed to run the EOS Printers, there will be a disruption in the Debtor's operations and the Debtor will not be able to timely meet its customers' orders. It is possible that Debtor's customers will resource work placed with the Debtor to alternative suppliers with comparable EOS printers available to run parts. This would result in a significant loss to the estate and would reduce the recovery available to the creditors.

39. None of the EOS prepetition claim is eligible for administrative claim treatment under Section 503(b)(9) or to treatment as a reclamation claim under Section 546(c).

40. EOS has agreed to extend to the Debtor the prepetition credit terms of net 30 days with a credit limit of $20,000.00 for a minimum of six months from the Petition Date.

41. Neither I, nor any other insider, has an interest in or relationship with EOS and I have not personally guaranteed the EOS claim.

**D. Moldex 3D North America, Inc.**

42. Moldex 3D North America, Inc. ("Molded") is a Taiwanese software developer with American operations located in Farmington Hills, Michigan. Moldex focuses specifically on developing software for 3D printing and injection molding.

43. Moldex developed the software used to operate the EOS Printers and owns the intellectual property rights to the software. The Debtor is merely a licensee of the Moldex software and has no continuing right to use the Moldex software with its consent.

44. Although originally subject to a licensing agreement, the Moldex software is licensed to the Debtor on a month to month basis.

45. Prepetition, the Debtor entered into a payment agreement with Moldex requiring monthly payments of $1,000 in order to remain current and to cure past due amounts due to Moldex. In the six months prior to the Petition Date, the Debtor paid Moldex a total of $4,000.00 in ordinary payments pursuant to the payment agreement.

46. The total prepetition balance due to Moldex is $2,932.00.

47. Moldex has threatened to terminate the Debtor's right to license the software if the Debtor fails to honor the prepetition payment agreement or fails to satisfy the prepetition claim in full.

48. Due to language constraints and difficulties, I have been unable to communicate with the Moldex representatives regarding the impact of the bankruptcy filing on the Debtor's ability to continue to make payments under the prepetition payment agreement. Moldex has continued to threaten to terminate the software if the Debtor does not continue to honor its prepetition payment obligations.

49. Given the very *di minimis* amount of the Moldex claim, Moldex's threat to terminate the software if the payment plan is not honored and the potential significant impact even a short disruption in service would have on the Debtor's customers, it is in the best interests of the Debtor, its estate and the creditors to treat Moldex as a critical vendor and pay its prepetition claim.

50. Without the Moldex software, the Debtor will be unable to operate the EOS Printers which are required for 15% of the Debtor's sales. There is no alternative supplier that can provide software to run the EOS Printers.

51. None of the Moldex prepetition claim is eligible for administrative claim treatment under Section 503(b)(9) or to treatment as a reclamation claim under Section 546(c).

52. Neither I, nor any other insider, has an interest in or relationship with Moldex and I have not personally guaranteed the Moldex claim.

53. The total amount due to critical vendors in connection with their prepetition claims is $64,063.32, of which $15,536.00 is eligible for administrative claim treatment under Section 503(b)(9) and an additional $6,250.00 is potentially eligible for reclamation claim status. Therefore, the Debtor is proposing to pay only $42,277.32 based solely on critical vendor status in connection with projected sales that relate directly to such vendors in the amount of $1,800,000 during 2021.

Pursuant to 28 USC § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

If sworn, Affiant can testify competently to the facts set forth herein.

**FURTHER DEPONENT SAYETH NOT.**

                                               \*
                             _____
                             John Tenbusch
                             Member

**\*signature on following page**

\*S&B\85363\001\PLDG\SB747428.DOC

1. The total amount due to critical vendors in connection with their prepetition claims is $64,063.32, of which $15,536.00 is eligible for administrative claim treatment under Section 503(b)(9) and an additional $6,250.00 is potentially eligible for reclamation claim status. Therefore, the Debtor is proposing to pay only $42,277.32 based solely on critical vendor status in connection with projected sales that relate directly to such vendors in the amount of $1,800,000 during 2021.

Pursuant to 28 USC § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

If sworn, Affiant can testify competently to the facts set forth herein.
**FURTHER DEPONENT SAYETH NOT.**

_____
John Tenbusch
Member